T.C. Memo. 2011-189

UNITED STATES TAX COURT

JESS L. MILLER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 26567-08.                    Filed August 9, 2011.

<u>Gerald E. Wilson</u>, for petitioner.

<u>Mindy S. Meigs</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, <u>Judge</u>:  Respondent determined a deficiency of
$176,164 in petitioner's Federal income tax for 2003.  The issue
for decision is whether distributions petitioner received from an
S corporation exceeded his adjusted basis in the corporation's
stock.  Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the year in issue.

## FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Petitioner resided in California at the time he filed his petition.

JAM Pharmaceutical, Inc. (JAM), a California corporation, was organized on July 13, 1995. On August 29, 1995, petitioner, through his revocable living trust, acquired all of JAM's stock-- 10,000 shares of common stock. JAM is a calendar year taxpayer and made valid S corporation elections for 2002 and 2003. Petitioner was JAM's sole corporate officer and director from the date of organization until 2007, when JAM was dissolved.

On August 29, 2002, JAM's articles of incorporation were amended to authorize the corporation to issue two classes of stock: (1) 1 million shares of class A voting common stock, and (2) 1 million shares of class B nonvoting common stock. Petitioner, as the sole shareholder and sole corporate officer and director, consented to the amended articles of incorporation. Thereafter, petitioner surrendered his 10,000 shares of common stock for 10,000 shares of class A stock, issued in two certificates of 5,000 shares, and 90,000 shares of class B stock.

A purchase agreement dated December 12, 2002, for JAM stock was executed by petitioner, as seller, and his son, as buyer. The purchase agreement stated that JAM had 1 million shares of

stock and that this represented all of the shares issued and authorized to be issued. The agreement also provided that at closing: "Seller shall sell to Buyer 950,000 shares of the Company for a purchase price per share of $.10". The closing date was not identified in the document. The purchase agreement also provided that the buyer's obligation to purchase the shares from the seller was subject to conditions, including (1) that the seller would deliver to buyer his resignation as director and officer of JAM on the closing date and (2) that all of the shares of JAM would concurrently be sold to buyer.

On December 31, 2002, petitioner's adjusted basis in his 100,000 shares of JAM stock was $866,795 (petitioner's original basis of $200,000 plus JAM's accumulated adjustment account balance of $666,795 as of December 31, 2002). Petitioner subsequently transferred 5,000 shares of class A stock and 90,000 shares of class B stock to his son. Petitioner's son did not pay petitioner $95,000 for the JAM stock, and petitioner did not resign as director and officer of JAM.

On July 24, 2003, petitioner filed a Form 709, United States Gift (and Generation-Skipping Transfer) Tax Return, for 2002. On the Form 709, petitioner reported transfers of JAM stock on December 31, 2002, to his son as gifts subject to gift tax as follows: (1) 5,000 shares of class A stock with petitioner's adjusted basis reported as $43,340 and the value of the gift as

$34,600 and (2) 90,000 shares of class B stock with petitioner's adjusted basis reported as $780,116 and the value of the gift as $511,200. A business valuation report dated November 5, 2002, for JAM was attached to the Form 709 that established the fair market values of the shares of stock as of August 31, 2002, reported on the return.

During 2003, JAM made distributions as follows:

| Date | Petitioner | Petitioner's Son |
|------|------------|------------------|
| Feb. 24 | $400,000 | --- |
| Apr. 11 | 75,000 | --- |
| Apr. 14 | --- | $170,000 |
| June 11 | 53,000 | 100,000 |
| Sept. 12 | 54,000 | 70,000 |
| Dec. 30 | --- | 38,000 |
| Additional distribution | 37,551 | 7,692 |
| Total | 619,551 | 385,692 |

On September 15, 2004, JAM filed a Form 1120S, U.S. Income Tax Return for an S Corporation, for 2003 and reported ordinary income of $366,162. On a Schedule K-1, Shareholder's Share of Income, Credits, Deductions, etc., attached to the tax return, JAM reported that petitioner owned 5 percent of JAM's stock during 2003 and that his share of JAM's ordinary income for 2003 was $18,308.

On May 9, 2005, the Internal Revenue Service (IRS) received an amended Form 1120S for 2003 from JAM that reported a loss of $1,110,390. The corresponding amended Schedule K-1 for petitioner reported a loss of $55,519, 5 percent of JAM's loss.

JAM's reported loss calculation included interest income of $2,057.

In 2006, the IRS examined the amended 2003 returns of JAM and petitioner and determined that JAM had $382,452 of ordinary income for 2003 and that petitioner's distributive share was $19,123. The IRS examiner determined that in 2003 petitioner received distributions of $548,664 from JAM that exceeded his basis in the JAM stock.

On May 8, 2007, a Form 4605, Examination Changes--Partnerships, Fiduciaries, Small Business Corporations, and Interest Charge Domestic International Sales Corporations, was executed by petitioner's son as JAM's majority shareholder accepting the IRS examiner's adjustments to JAM's income, property distributions other than dividends, section 179 expense deductions, and charitable contributions, among others.

On October 9, 2007, petitioner filed a Form 709 reporting gifts for 2003. Petitioner did not report a gift of JAM stock in 2003. Petitioner's certified public accountant of over 30 years prepared petitioner's 2002 and 2003 gift tax returns, petitioner's personal income tax return for 2003 (including his amended return), and the 2003 JAM tax return.

On August 4, 2008, the IRS sent petitioner a notice of deficiency for 2003. The IRS determined that petitioner's JAM stock basis was $51,661 after the transfer of 95 percent of his

JAM stock to his son and accordingly $548,664 in distributions from JAM to petitioner were in excess of his stock basis and taxable as a long-term capital gain.  In the notice the IRS adjusted petitioner's taxable income, resulting in a determined tax deficiency of $176,164.

### OPINION

The parties agree that the 2003 distributions from JAM to petitioner totaled $619,551, but they dispute petitioner's basis in the JAM stock and accordingly whether distributions he received from JAM in 2003 exceeded his stock basis.

Petitioner has the burden of proving the basis of his JAM stock for purposes of determining the amount of gain he must recognize.  See sec. 7491(a).  In his brief petitioner asserts that the burden of proof has shifted to respondent under section 7491(a).  Respondent contends that petitioner's failure to raise this argument at or before trial prejudiced respondent's ability to present evidence at trial that petitioner did not meet the requirements of section 7491(a).  We need not address respondent's concern because petitioner has not shown that he has met the requirements of section 7491(a).

Section 7491(a) requires petitioner to introduce credible evidence with respect to each issue for which he seeks to shift the burden of proof.  Petitioner has not satisfied that standard. See Higbee v. Commissioner, 116 T.C. 438, 442-443 (2001).  He did

not identify each issue for which he is seeking to shift the burden of proof or produce credible evidence relating to the issue that would shift the burden to respondent. The testimony of petitioner was vague and in no way explained away the consistent reporting that he had a 5-percent interest in JAM in 2003. Petitioner's 2002 Form 709 reported that he gave 95 percent of the JAM shares to his son, and a 5-percent interest for petitioner was reported on JAM's 2003 Form 1120S and petitioner's individual income tax return. In any event, our conclusions are based on a preponderance of the evidence, and thus the allocation of the burden of proof is immaterial. See Martin Ice Cream Co. v. Commissioner, 110 T.C. 189, 210 n.16 (1998).

Section 1366(a)(1) provides that an S corporation shareholder shall take into account his or her pro rata share of the S corporation's items of income, loss, deduction, or credit for the S corporation's taxable year ending with or in the shareholder's taxable year. Section 1367 provides that basis in S corporation stock is increased by income passed through to the shareholder under section 1366(a)(1), and decreased by, among other items, distributions not includable in the shareholder's income pursuant to section 1368.

Section 1368(a) provides that a distribution of property made by an S corporation with respect to its stock to which

section 301(c) would apply but for this subsection is treated in the manner provided in either section 1368(b) or section 1368(c). A distribution made by an S corporation that has no accumulated earnings and profits as of the end of its taxable year is treated in the manner provided in section 1368(b). See sec. 1.1368-1(c), Income Tax Regs. Nothing in the record shows that JAM had accumulated earnings and profits at the end of 2003; thus section 1368(b) applies to determine the treatment of distributions.

For S corporations without accumulated earnings and profits, distributions are not included in a shareholder's gross income to the extent that they do not exceed the adjusted basis of the shareholder's stock (but are applied to reduce basis), while any distribution amount in excess of basis is treated as gain from the sale or exchange of property. Sec. 1368(b). For purposes of section 1368(b), a distribution is taken into account on the date the corporation makes the distribution, regardless of when the distribution is treated as received by the shareholder. Sec. 1.1368-1(b), Income Tax Regs.

The parties agree that petitioner's JAM stock basis was $866,795 before he transferred 95 percent of his shares to his son. On his 2002 Form 709, petitioner reported that his adjusted basis in stock transferred by gift on December 31, 2002, was $823,456. Respondent notes that in the notice of deficiency, petitioner's adjusted basis in his remaining 5,000 shares after

the transfer of JAM shares to his son was improperly calculated as $51,661 (instead of $43,339), but respondent does not argue for application of a figure other than $51,661.

Petitioner's 5-percent portion of JAM's taxable income in 2003 was $19,123 and of JAM's interest income was $103. The IRS used these figures to calculate the determined amount of petitioner's JAM stock basis as $70,887 ($51,661 + $19,123 + $103). Respondent contends that distributions of $548,664 from JAM to petitioner were in excess of his basis ($619,551 distributions less $70,887 basis) and should be treated as long-term capital gain from the sale or exchange of property under section 1368(b).

Petitioner first argues that respondent's determination is incorrect because he did not give the JAM stock to his son on December 31, 2002, as was reported on his 2002 Form 709, but sometime later than that date. However, he signed the filed Form 709 that reported the gift of 95,000 shares of JAM on that date and did not file an amended gift tax return. The stock certificate stubs identify December 31, 2002, as the date that 95,000 shares of JAM were issued to petitioner's son. Petitioner contends that these stubs were not valid because they were not executed; however, he testified at trial that he was "not sure" whether he ever signed a stock assignment.

It is well established that "a transaction is to be given its tax effect in accord with what actually occurred and not in accord with what might have occurred" and that "while a taxpayer is free to organize his affairs as he chooses, nevertheless, once having done so, he must accept the tax consequences of his choice, whether contemplated or not". Commissioner v. Natl. Alfalfa Dehydrating & Milling Co., 417 U.S. 134, 148-149 (1974).

Petitioner did not report a gift of JAM stock in 2003, but in 2002. The record, including petitioner's 2002 Form 709 and the stock certificate stubs, shows that petitioner gave 95,000 shares of JAM stock to his son on December 31, 2002. Petitioner cannot now, after learning of the tax consequences, disavow what occurred--as reflected in the contemporaneously prepared documents--with respect to his gift of 95 percent of the JAM stock to his son. See Hill v. Commissioner, T.C. Memo. 2010-268.

Petitioner alternatively argues that he did not actually give JAM stock to his son, but that there was a part-sale and part-gift transaction with his son. He contends on brief that the purchase price of $95,000 identified in the purchase agreement should be considered as paid through the additional distributions that he received from JAM in 2003.

The record does not show that a sale of the JAM stock, partial or otherwise, occurred as outlined in the signed purported purchase agreement. The purchase agreement terms do

not reflect JAM's August 29, 2002, amended articles of incorporation authorizing 1 million shares each of class A and of class B stock.  JAM issued a total of 100,000 shares of stock to petitioner--not 1 million shares as the purchase agreement terms indicate.

Petitioner testified that his son did not pay the purchase price as identified in the purchase agreement.  Further, the purchase agreement provided that petitioner would deliver his resignation as director and officer of JAM to his son on the closing date (with no closing date identified).  Petitioner did not do so.  Moreover, petitioner did not report a sale of JAM stock on his 2002 or 2003 tax return.  Petitioner has not shown that the JAM stock transfer to his son was a part-sale and part-gift transaction.

For a corporation to qualify as an S corporation, it must have only one class of stock.  Sec. 1361(a), (b)(1)(D).  The parties do not argue that disproportionate distributions from JAM created a second class of stock for purposes of section 1361(b).

Petitioner instead argues that because JAM made disproportionate distributions and that the distributions did not create a second class of stock for purposes of section 1361(b) upon examination, that the disproportionate distributions should be "recharacterized".  Petitioner contends that the disproportionate distributions during 2003 varied because JAM's

shareholders changed during that year and that accordingly the effective date of the transfers of JAM stock from petitioner to his son should be treated as occurring after the disproportionate distributions.

Section 1.1361-1(l)(2)(i), Income Tax Regs., provides, in part:

> Although a corporation is not treated as having more than one class of stock so long as the governing provisions provide for identical distribution and liquidation rights, any distributions (including actual, constructive, or deemed distributions) that differ in timing or amount are to be given appropriate tax effect in accordance with the facts and circumstances.

Petitioner contends that because the parties agree that JAM was an S corporation in 2002 and 2003, it cannot be argued that the one-class-of-stock rules have been violated and thus the disproportionate distributions in 2003 should be given appropriate tax effect in accordance with the facts and circumstances. See sec. 1.1361-1(l)(2)(i), Income Tax Regs. Petitioner does not directly argue that the character of the disproportionate distributions should change to give them proper tax effect, but asserts that recharacterization should apply to treat the effective date of the transfers of JAM stock from petitioner to his son as occurring after the disproportionate distributions.

Petitioner relies on an example in the regulations under section 1361 that addresses whether an S corporation with

distributions that differ in timing should be treated as having more than one class of stock. See sec. 1.1361-1(l)(2)(vi), Example (2), Income Tax Regs. In the example, an S corporation with two equal shareholders entitled to equal distributions under the S corporation's bylaws distributes an amount to one shareholder in the current year and an equal amount to the other shareholder the following year, with circumstances that indicate the difference in timing did not occur because of a binding agreement relating to distribution or liquidation proceeds. Id. The example explains that the difference in timing of the distributions to the shareholders does not cause the S corporation to be treated as having more than one class of stock. Id.

Petitioner has not offered evidence to show whether JAM made corrective distributions, nor has he asserted that the "character" of the distributions should change to give them appropriate tax effect. He instead contends that the effective date of the transfer of stock should be recognized as occurring after the disproportionate distributions, implying somewhat obscurely that the logic of the example he cites supports his position. The example terms do not address an effective date "recharacterization" when disproportionate distributions are made to a valid S corporation with one class of stock, but explain that distributions that are different in timing may be equalized

within a period of time to avoid violating the one-class-of-stock provision.  See id.  Petitioner's argument for recharacterization is not supported by the facts and circumstances.

We conclude that on December 31, 2002, petitioner made a gift of 95,000 shares of JAM stock to his son, leaving petitioner with a 5-percent interest in JAM with an adjusted basis of $51,661.  Accordingly, in 2003 petitioner received distributions from JAM in excess of his JAM stock basis, resulting in a long-term capital gain to petitioner.  All arguments of the parties have been considered; to the extent not addressed they are without merit or moot.  For the reasons stated herein,

Decision will be entered

for respondent.